AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT

for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| Information associated with a Target ) | Case No.   MJ21-350 |
| Account/Identifier, for Investigation of 21 ) | |
| U.S.C. § 841 and Other Offenses ) | |
| ) | |

## APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachment A, located in the Western District of Washington, there is now concealed property and evidence described in Attachment B. This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution and Possession with Intent to Distribute a Controlled Substance and Conspiracy. |

The application is based on the facts set forth in the attached affidavit, which is incorporated herein by reference with all attachments and exhibits. Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

☒ Delayed notice of 90 days (give exact ending date if more than 30 days: October 24, 2021) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:
☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

Steven J. Meyer, Special Agent
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or
☒ The above-named officer provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:  June 11, 2021

_____
*Judge's signature*

John L. Weinberg, United States Magistrate Judge
*Printed name and title*

City and state:  Seattle, Washington

USAO # 2021R00621

# ATTACHMENT A

## Property to Be Searched and Subscriber/Subject Information

1.      Records and information associated with the cellular phones:

        a.      **Target Telephone 2** (**TT2**): a mobile telephone assigned the number 253-242-0016 and International Mobile Subscriber Identity (IMSI) number 311480553164308.  **TT2** is a cellular telephone with service provided by Verizon Wireless, a wireless telephone service provider located at 180 Washington Valley Road, Bedminster, New York 07912.  **TT2** has no listed subscriber with a subscriber address of 6500 Emerald PY, Dubling, Ohio 43016, and believed to be used by "ROJO."  **TT2** is described herein and in Attachment A.  Service to **TT2** began on February 5, 2021.

2.      The property to be searched includes:  (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

3.      "Verizon Wireless" is identified in Attachment B as the "**Wireless Provider.**"

ATTACHMENT A -- PAGE 1
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127.  As such, this warrant authorizes the collection of subscriber records, pen-trap data, and cell site data information regarding the Target Telephone.  **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).**  Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below.  *See* 18 U.S.C. § 3103a(b)(2).

I.   **Section I:  Information to be Disclosed by the Wireless Provider**

    1.     **Subscriber/Account Information.**  The following non-content information about the customers or subscribers associated with the Accounts listed in Attachment A:

        a.     Names (including subscriber names, usernames, and screen names);

        b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        c.     Local and long-distance telephone connection records for 60 days prior to June 11, 2021;

        d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions for 60 days prior to the date of this warrant;

        e.     Length of service (including start date) and types of service utilized;

        f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

ATTACHMENT B -- PAGE 1

USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.    Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days from the date of this warrant.**

a.    The Wireless Provider shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Telephone including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

(i)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

(ii)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(iii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

(iv)    Source and destination telephone numbers and email addresses.

b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, the Wireless Provider shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices:  published or non-published subscriber names and addresses, including billing addresses.

3.    **Historical Cell Cite Location Information.**

a.    All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account for 60 days prior to the date of this warrant including:

i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source

ATTACHMENT B -- PAGE 2

USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and destination telephone numbers (call detail records), email addresses, and IP addresses); and

ii.     historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received.  This information is to be provided irrespective of the application, name, or report utilized by the Wireless Provider.  Accordingly, this information includes the following data sets to the extent that they are collected by the Wireless Provider: RTT, PLU, PCMD, NELOS, EVDO, TruCall, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Telephone(s).

4.     **Prospective Cell Site Location Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A **for a period of 45 days from the date of this warrant**, during all times of day and night.  This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone or account described in Attachment A.

b.     The physical address and coverage maps of cell towers used by the Target Telephone(s).

5.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.     All information about the location of the Target Cell Phone described in Attachment A **for a period of 45 days from the date of this warrant**, during all times of day and night.  This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A.

b.     The physical address and coverage maps of cell towers used by the Target Telephone(s).

To the extent that the cell site information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of the Wireless Provider, the Wireless Provider is required to disclose the Location Information

ATTACHMENT B -- PAGE 3

USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

to the government pursuant to this warrant.  In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), the Wireless Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Wireless Provider's services.  The government shall compensate the Wireless Provider for reasonable expenses incurred in furnishing such facilities or assistance.

## II.   <u>Section II</u>:  Information to Be Seized by the Government

1.      All information described above in Section I that constitutes evidence of violations of 21 U.S.C. §§ 841 and 846 involving the DTO described herein as well as Money Laundering, and conspiracy to commit the same, in violation of 18 U.S.C. § 1956.

2.      All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.      All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.      Location Information regarding the Target Telephone.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Wireless Provider in order to locate the things particularly described in this Warrant.

ATTACHMENT B -- PAGE 4

USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
A SEARCH WARRANT AND PEN-TRAP ORDER**

STATE OF WASHINGTON )
                     )   ss
COUNTY OF KING       )

I, Steven Meyer, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephones (the "Target Telephone"):

a.      **Target Telephone 2 (TT2)**: a mobile telephone assigned the number 253-242-0016 and International Mobile Subscriber Identity (IMSI) number 311480553164308.  **TT2** is a cellular telephone with service provided by Verizon Wireless, a wireless telephone service provider located at 180 Washington Valley Road, Bedminster, New York 07912.  **TT2** has no listed subscriber with a subscriber address of 6500 Emerald PY, Dublin, Ohio 43016, and believed to be used by "ROJO."  **TT2** is described herein and in Attachment A.  Service to **TT2** began on February 5, 2021.

2.      The wireless telephone service provider identified in Paragraph 1(a) is referred to throughout this affidavit and attachments as the "wireless provider," "the wireless service provider," or "the wireless service provider identified in Attachment A."

<u>ECPA</u>

3.      The Court has jurisdiction to issue the proposed warrant under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 1
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Pen Register Act

4.      Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

5.      The Court has jurisdiction to issue the requested pen-trap order because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2).  Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

6.      This application includes all the information required by the Pen Register Act.  *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1).  Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Natalie Walton-Anderson that (1) identifies the Drug Enforcement Administration (DEA) as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency.  18 U.S.C. § 3122(b).  The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

7.      A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3).  A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

8.      In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls.  Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers.  The

prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrant will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the Target Telephone without geographic limit.

9. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order through Attachment B of the requested warrant that AT&T and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the DEA, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

**10. Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

## AGENT BACKGROUND

11. I am a Special Agent with the DEA and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington, D. C. from June 2006 to April 2009. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 3
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     During my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation.  I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations.  These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses.  These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register, trap and trace, and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity to monitor, listen to, review transcripts and line sheets (prepared by linguists) documenting the content of intercepted conversations involving the trafficking of cocaine, heroin, methamphetamine, fentanyl, and other narcotics, by persons who used some form of code to thwart law enforcement.  I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone.  I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

13.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all my knowledge about this matter.

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 4
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 (distribution of, and possession with intent to distribute, controlled substances) and 846 (attempt and conspiracy to commit the above controlled substance offenses) have been committed, are being committed, and will be committed by Rosangelica DAVILA, and other identified and unidentified persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses as well as locations and other assets (such as vehicles and real estate) that are used in their commission.

**SOURCES OF INFORMATION**

15.     I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; from witnesses and informants cooperating with law enforcement, and from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by DEA.

16.     When this affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the Washington State Department of Licensing (DOL), or the equivalent agency in other states.  Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DOL or the equivalent agency in other states.  When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies.  When I refer to telephone subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 5
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

familiar with this investigation.  When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen registers.  When I refer to beliefs or suspicions held by investigators, these beliefs or suspicions are based upon training and experience.

17.     During the investigation described below, agents have used the assistance of a confidential source, referred to as Confidential Source 1 (CS1).  CS1 is providing information and assistance to the DEA in exchange for favorable recommendation for a pending charge. In April 2021, the Bremerton Special Operations Group (SOG) arrested CS1 and recovered approximately one-half pound of heroin, 840 fentanyl pills, and a stolen handgun.  CS1 agreed to cooperate and agreed to do controlled buys from his/her supplier in exchange for a positive recommendation to the prosecutor's office on their pending charges.

18.     CS1 has six felony convictions for the following crimes: Attempt to Elude; Robbery 1st degree (attempt); Unlawful possession of a firearm 1st degree; Forgery; Residential Burglary (over 10 years ago); and Theft 1st degree (over 10 years ago).  CS1 also has 10 gross misdemeanor convictions, only one of which occurred in the last 10 years.  In addition, CS1 has three misdemeanor convictions for traffic offenses and one "classification unknown" conviction for malicious mischief.   During conversations with agents, CS1 made numerous statements against his/her penal interest.  CS1 admitted to selling large quantities of heroin and fentanyl pills.  CS1 also admitted to using methamphetamine.  CS provided information on several local drug dealers, some of which agents were able to verify through independent sources.  Based on the facts and circumstances, I believe CS1 is telling the truth regarding his/her knowledge pertaining to narcotics activity in Washington, particularly the information pertaining to this investigation.

//

//

**PROBABLE CAUSE**

19.     In early April 2021, agents met with CS1 regarding drug distributors in western Washington.  CS1 identified his/her primary supplier as a female with Hispanic features by the name of "Rosa" who used phone number 206-377-9294 (TT1).  Agents conducted phone toll analysis and researched TT1 in law enforcement databases which allowed them to identify Rosangelica DAVILA as CS1's likely supplier.

*Controlled Purchase #1 from Rosangelica DAVILA*

20.     On April 21, 2021, agents directed CS1 to conduct a controlled purchase of fentanyl pills from DAVILA.  The deal took place at DAVILA's residence at the Trellis apartment complex at 2120 SW 352nd Street, Federal Way, Washington.  Prior to the purchase, agents met with CS1 in a secure location.  Agents searched CS1's person with negative results.  Agents then provided CS1 with $1,800 in pre-recorded funds to make the buy and equipped him/her with a video recording device.  Agents then directed CS1 to contact DAVILA at 206-377-9294 in order to arrange the transaction.  Following that, agents drove CS1 to the vicinity of DAVILA's residence and dropped him/her off in the area.  Other agents had established surveillance at the deal location and observed CS1 approach the door which accessed DAVILA's residence.  CS1's video recording device captured him/her walking up the stairs and turning right to DAVILA's door.  CS1 then entered the residence.  A few minutes later, CS1 exited the apartment and returned to the agent's vehicle.  CS1 said DAVILA was in a rush, and suspected other people were going to the residence to supply or receive drugs.  In her haste, DAVILA forgot to take the money from CS1.  Agents drove CS1 back to the residence and CS1 met DAVILA outside her apartment door to give her the money.

21.     Following the transaction, agents drove CS1 back to the neutral location and searched his/her person with negative results.  Following that, CS1 turned over a bag with approximately five hundred small blue pills marked M30.  CS1 was also provided three additional pills which looked slightly different from the others.  CS1 said DAVILA gave him/her the three pills after the exchange of money and remarked he/she should tell

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 7
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

her what he/she thought of them.  Agents examined the markings on the five hundred small blue pills, and they were consistent with Percocet, a schedule II drug.  Based on my training and experience, I know the five hundred pills are likely fentanyl pills pressed to resemble Percocet.  While agents met with CS1, surveillance units observed and photographed a female leaving the residence who CS1 later identified as DAVILA.

### Controlled Purchase #2 from Rosangelica DAVILA

22.     On April 27, 2021, Superior Court Judge, the Honorable Sally F. Olsen, authorized GPS tracking on DAVILA's 206-377-9294 number.  A few days later, detectives/agents initiated tracking and began receiving location information on the phone.

23.     During the week of May 3, 2021, agents directed CS1 to set up a deal for 300 fentanyl pills from DAVILA for $3,000.  Later in the week, CS1 informed agents that DAVILA had agreed to do the deal at her residence.

24.     On May 4, 2021, at approximately 5:45 p.m., agents met with CS1 at a designated neutral location in order to conduct a controlled purchase of fentanyl pills from DAVILA.  Agents searched CS1's person and vehicle with negative results.  Following that, agents provided CS1 with $3,000 in pre-recorded funds to make the buy and a video recording device.  Simultaneously, surveillance units assumed position at the deal location in order to possibly observe DAVILA and provide security for CS1.  Shortly thereafter, agents directed CS1 to drive to the deal location.  Surveillance was maintained on CS1 along the entire route.

25.     At approximately 6:15 p.m., agents observed CS1 arrive and park at the deal location and then enter DAVILA's residence building.  Shortly thereafter, CS1 contacted agents and said DAVILA's roommate let him/her into the apartment but he/she was told DAVILA was currently at the salon but would be returning soon.  I checked location information on DAVILA's phone, and it showed the device was within close proximity to the apartment complex.  Designated surveillance units investigated salons in the area of the location data and identified a red 2009 Jeep Liberty, Washington license

plate BVP5073, parked at the Perfect Nails and Spa at 2144 SW 336th Street, Federal Way, Washington.  Shortly thereafter, agents observed DAVILA and an unidentified Hispanic female exit the salon, get into the Jeep, and depart the area.

26.     At approximately 7:10 p.m., surveillance units repositioned from the vicinity of the salon to the Trellis apartments in anticipation of DAVILA's arrival.  At approximately 7:50 p.m., agents observed DAVILA and her associate arrive in the red Jeep and park at the residence.  DAVILA was observed exiting the vehicle and meeting up with an unidentified Hispanic male.  Agents had observed the unidentified Hispanic male get out of a silver 2007 Mazda, Washington license BTR7269, and walk over to DAVILA.  Following that, DAVILA and the unidentified Hispanic male walked into the apartment building.  Following the meet, detectives observed the unidentified male exit the vehicle with a small package and depart the area.  DAVILA's associate then exited the Jeep and walked into DAVILA's apartment building.  Based on my training and experience, length of time of the interaction, and the small package observed in the individual's hand, I believed the meeting in the red Jeep Liberty was a drug transaction.

27.     At approximately 8:00 p.m., CS1 exited DAVILA's apartment building and departed the area back to the neutral location.  Surveillance was maintained on CS1 along the entire route.  Upon arrival at the neutral location, agents searched CS1's vehicle and person with negative results. Agents took possession of the suspected fentanyl pills and observed they were blue in color and stamped with an "M" and "30" on each side. The markings on the pills were consistent with Percocet, a schedule II drug.  Based on my training and experience, I know the pills are likely fentanyl pills pressed to resemble Percocet.  Agents conducted a debrief with the CI and learned the unidentified Hispanic male who walked in with DAVILA had delivered the pills to her once they got into the apartment.  DAVILA introduced the unidentified Hispanic male to CS1 as "ROJO."  CS1 said he/she still conducted the deal directly with DAVILA.

28.     On June 2, 2021, agents conducted phone toll analysis on DAVILA's phone number (TT1), specifically the time period surrounding the second controlled buy

on May 4, 2021.  They learned that DAVILA's TT1 had made a thirty second outgoing call to a **253-242-0016 (TT2)** at 7:25 p.m., and then had a thirty-two second incoming call from **TT2** at 7:48 p.m.  During the controlled buy on May 4, agents had observed DAVILA arrive at her residence at approximately 7:50 p.m.  Based on my training and experience, I believe the call from **TT2** to DAVILA's TT1 at 7:48 p.m. was "ROJO" letting DAVILA know he was waiting at the apartment complex.  DAVILA then parked, met up with ROJO, and they walked in together and completed the deal with CS1.

## USE OF LOCATION DATA

29.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it.  Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI").  The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.  Currently, **TT2** has IMSI: 311480553164308.

30.     Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course.  The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call.  They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content.  In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 10
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

31.     Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts.  The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

32.     Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network.  When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI.  Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication.  Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

33.     In my training and experience, I have learned that Verizon is a company that provides cellular telephone access to the general public.  I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records).  E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.  Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 11
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data is typically less precise that E-911 Phase II data.

34.    Based on my training and experience, I know that Verizon can collect E-911 Phase II data about the location of the Target Telephone, including by initiating a signal to determine the location of the Target Telephone on the wireless provider's networks or with such other reference points as may be reasonably available.

35.    When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

36.    Based on my training and experience, I know that Verizon can collect cell-site data about the Target Telephone.  Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication.  I also know that wireless providers such as Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

37.    Different service providers use different systems, applications, and reports to collect or analyze cell-site data.  These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Network Event Location System or "NELOS" (AT&T), EVDO, ALULTE,

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 12
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Timing Advance, and TruCall.  RTT data, for example, estimates the approximate

2    distance of the cellular device from a cellular tower based upon the speed with which

3    signals travel between the device and the tower.  This information can be used to estimate

4    an approximate location range that is more precise than typical cell-site data.

5        38.    Based on my training and experience, I know that wireless providers such

6    as Verizon typically collect and retain information about their subscribers in their normal

7    course of business.  This information can include basic personal information about the

8    subscriber, such as name and address, and the method(s) of payment (such as credit card

9    account number) provided by the subscriber to pay for wireless communication service.  I

10   also know that wireless providers such as Verizon typically collect and retain information

11   about their subscribers' use of the wireless service, such as records about calls or other

12   communications sent or received by a particular device and other transactional records, in

13   their normal course of business.  In my training and experience, this information may

14   constitute evidence of the crimes under investigation because the information can be used

15   to identify the Target Telephone's user or users and may assist in the identification of co-

16   conspirators and/or victims.

17       39.    Modern cell phones allow users to switch their telephone numbers, use

18   multiple telephone numbers on a single device, and transfer their telephone number to a

19   different cell phone.  These changes can be made with the assistance of the wireless

20   provider or by taking actions such as changing the "SIM card" (short for "subscriber

21   identity module card") of a cellphone.  To provide for any such changes made to the

22   Target Telephone, Attachment A specifies that the property to be searched includes:

23   (i) any instrument to which the listed target telephone number was assigned within the

24   last 30 days, and that now has been assigned a changed telephone number, (ii) any

25   changed telephone number assigned to an instrument now bearing the same unique

26   identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number

27   listed above, or that was bearing the same unique identifying number as the telephone

28   number listed above, at any point within the last 30 days, (iii) any changed unique

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 13
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  identifying number subsequently assigned to the same telephone number, or (iv) any

2  additional changed telephone number and/or unique identifying number, whether the

3  changes occur consecutively or simultaneously, listed to the same subscriber and wireless

4  telephone account number as the telephone numbers listed above, within the period of

5  disclosure authorized by this warrant.

6  ## AUTHORIZATION REQUEST

7      40.    Based on the foregoing, I request that the Court issue the proposed search

8  warrants and pen-trap orders, pursuant to Federal Rule of Criminal Procedure 41, 18

9  U.S.C. § 2703(c), and 18 U.S.C. § 3123.

10     41.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of

11 Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to

12 delay notice to the subscriber or user of the Target Telephone until 90 days after the

13 collection authorized by the warrant has been completed.  There is reasonable cause to

14 believe that providing immediate notification of the warrant may have an adverse result,

15 as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of

16 the Target Telephone would seriously jeopardize the ongoing investigation, as such a

17 disclosure would give that person an opportunity to destroy evidence, change patterns of

18 behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).

19 As further specified in Attachment B, which is incorporated into the warrant, the

20 proposed search warrant does not authorize the seizure of any tangible property.  *See* 18

21 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of

22 any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire

23 or electronic information, there is reasonable necessity for the seizure for the reasons set

24 forth above.  *See* 18 U.S.C. § 3103a(b)(2).

25     42.    I further request that the Court direct Verizon to disclose to the government

26 any information described in Attachment B that is within its possession, custody, or

27 control.  I also request that the Court direct Verizon to furnish the government all

28 information, facilities, and technical assistance necessary to accomplish the collection of

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 14
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    the information described in Attachment B unobtrusively and with a minimum of
2    interference with Verizon's services, including by initiating a signal to determine the
3    location of the Target Telephone on Verizon's network or with such other reference
4    points as may be reasonably available. The agency shall reasonably compensate Verizon
5    for reasonable expenses incurred in furnishing such facilities or assistance.

6        43.    Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant
7    by serving the warrant on Verizon. Because the warrant will be served on Verizon, who
8    will then compile the requested records and data, reasonable cause exists to permit the
9    execution of the requested warrant at any time in the day or night. I therefore request that
10    the Court authorize execution of the warrant at any time of day or night, owing to the
11    potential need to locate the Target Cell Phone outside of daytime hours.

                              Steven Meyer, Affiant
                              Special Agent
                              DEA

17        The above-named agent provided a sworn statement to the truth of the foregoing
18    affidavit by telephone on this 11th day of June, 2021.

                              HON. JOHN L. WEINBERG
                              United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT STEVEN MEYER - 15
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# EXHIBIT 1

## DECLARATION

I, Natalie Walton-Anderson, declare as follows:

1.      I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.      I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.  Pursuant to 18 U.S.C. § 3122(a)(1), I am the applicant for purposes of the pen-trap portion of the requested warrant and order.

3.      Pursuant to 18 U.S.C. § 3122(b), I certify that the Drug Enforcement Administration is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made based on information officially furnished, and on that basis, I verily believe such information to be true.

Executed this 11th day of June, 2021.

*/s/ Natalie Walton-Anderson*
Natalie Walton-Anderson
Assistant United States Attorney

EXHIBIT 1 -- PAGE 1
USAO # 2021R00621

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970